UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HALDIRAM INDIA (P) LTD,<br><br>                          Plaintiff,<br>    v.<br><br>PUNJAB TRADING, INC.,<br><br>                          Defendant. | CASE NO. 2:25-cv-01462-LK<br><br>ORDER GRANTING IN PART MOTION FOR A PRELIMINARY INJUNCTION |

      This matter comes before the Court on Plaintiff Haldiram India (P) Ltd.'s Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue. Dkt. No. 11. Haldiram has brought this action for trademark infringement and seeks an order enjoining Defendant Punjab Trading, Inc. from importing, distributing, selling, and/or offering for sale Punjab's gray market goods that contain Haldiram's trademarks. *Id.* at 1–2. Punjab has not appeared or responded to the motion. For the reasons set forth below, the Court grants in part the motion for a preliminary injunction.

# I. BACKGROUND

**A. Haldiram Sells Different Versions of its Snack Foods in India and in the United States**

Haldiram is an Indian company that develops, manufactures, and distributes Indian-style snack foods. Dkt. No. 1 at 4–5. Haldiram owns the following trademarks for its products (collectively, "Haldiram's Marks"):

| Marks | Registration |
|---|---|
| Haldiram's | Reg. No. 2,766,286 for "[p]rocessed nuts, namely, peanuts and cashews; preserved fruits; preserved vegetables; dried fruits; dried vegetables; cooked vegetables; fried potatoes," and more. Dkt. No. 11-2 at 41. |
| Haldiram's | Reg. No. 2,357,883 for "candy, cereal based snack foods, and a line of bakery goods." *Id.* at 39. |
| Haldiram's | Reg. No. 1,963,956 for "snack mix consisting primarily of crackers, pretzels, . . . candied nuts, and candy." *Id.* at 37. |

Haldiram "is well-known in the United States as a source of Indian-style food products," and through its "advertising, marketing, and promotional efforts, Haldiram has developed a highly favorable reputation and substantial goodwill in the marketplace in the United States all symbolized" by Haldiram's marks. Dkt. No. 11-5 at 2.

Haldiram's products manufactured for U.S. consumers "are materially different" than the versions sold domestically in India. Dkt. No. 11-5 at 2. It manufactures and packages products for the U.S. market "to ensure that the contents, packaging, and labelling of Haldiram United States products comply with United States laws and regulations" and cater to "the preferences of United States customers[.]" Dkt. No. 11-5 at 2. Specifically, Haldiram's products made for the United

1    States include "Nutrition Facts" labels that comply with regulations from the Food and Drug

2    Administration ("FDA"). *Id.* at 2–3. "In contrast, the 'Nutritional Information' label found on the

3    packaging for Haldiram's domestic India products is not FDA compliant" because it omits required

4    nutrition information and does not comply with U.S. formatting regulations. *Id.* at 3.

5           In addition to packaging differences, "[t]he composition and formulations of Haldiram's

6    United States products differ from Haldiram's domestic India products." *Id.* For example,

7    Haldiram's United States Kaju Mixture contains 12 percent cashews, while the Indian Kaju

8    Mixture contains 10 percent cashews. *Id.* The Indian Kaju Mixture also contains spices and

9    synthetic food color that are not found in the U.S. version. *Id.* Finally, the U.S.-bound and Indian

10   versions of the products direct customers to different customer service entities, and only the

11   customer service entity that is designated on Haldiram's U.S. products "can properly address

12   concerns that consumers raise about Haldiram's products that have been exported into the United

13   States." *Id.* at 3–4.

14   **B.    Haldiram's Distributor Found that Punjab is Selling Infringing Products**

15          Haldiram distributes its products in Washington, Oregon, Idaho, Alaska, and Montana

16   exclusively through Reshmi's Group, Inc. Dkt. No. 11-4 at 2. The Haldiram products Reshmi sells

17   and distributes in those states are "produced and packaged by Haldiram's exclusively for the

18   United States market." *Id.* In early July 2024, Reshmi employees were overseeing the loading of

19   product for a customer when they observed a case of Haldiram's Nut Cracker product marked

20   "NOT FOR EXPORT" inside the customer's vehicle. *Id.* The customer informed Reshmi's

21   employees that it obtained the product from Punjab, and Reshmi's Executive Vice President—

22   Syed Mohammad Ali Masood—confirmed on inspection that "the products in the case were not

23   Haldiram's products produced for the U.S. market." *Id.* For example, the product included

24

temporary "Nutrition Facts" stickers "affixed over the printed nutrition panel on the packaging." *Id.*; *see also id.* at 13–16.

In light of this discovery, Mr. Masood commenced an investigation of unauthorized Haldiram products distributed into the Washington market. *Id.* at 2–3. In July 2024, Mr. Masood visited Punjab's warehouse and the All India Spice retail store, located in Auburn, Washington, where he saw a number of Haldiram India Products displayed on the shelf for sale. *Id.* at 3. Those packages—including two he purchased—were labelled "NOT FOR EXPORT" and included temporary "Nutrition Facts" stickers affixed over the nutritional information panels printed on the original packages. *Id.* at 3, 18, 20–21. He observed "[s]imilar inconsistencies" on other Haldiram products located in Punjab's warehouse. *Id.* at 3. Other Reshmi employees visited the Apna Bazar and Dhotsons retail stores in Washington, where they purchased Haldiram products that were not intended for the U.S. market. *Id.* at 3–4. The Haldiram products found at Apna Bazar and Dhotsons included temporary "Nutrition Facts" stickers affixed over the printed nutrition panel on their packages. *Id.* at 3–4. The packages at Apna Bazar also included stickers that stated "PRODUCT OF INDIA" affixed over their printed "NOT FOR EXPORT" labels, *id.* at 3, 23, 25–31, while the packages purchased at Dhotsons had the words "NOT FOR EXPORT" visible, *id.* at 4, 33, 35–38. These stickers were not affixed to the products by Haldiram or anyone authorized by Haldiram. Dkt. No. 11-5 at 4.

Mr. Masood concluded that the Haldiram products purchased from Apna Bazar and Dhotsons also came from Punjab because they "had the same packaging, batch numbers, and labelling inconsistencies as the products [he] observed during [his] prior visit to Punjab Trading." Dkt. No. 11-4 at 4. Reshmi's "is continuously monitoring the marketplace" and is "currently seeing unauthorized Haldiram's products not produced for the U.S. market appearing in retail stores in Washington." *Id.*

Haldiram has likewise concluded that Punjab is importing, distributing, and/or selling Haldiram products that were not intended for the United States market. Dkt. No. 11-5 at 4. Punjab is not an authorized importer, distributor, or reseller of Haldiram products. *Id.*

On August 29, 2024, Haldiram sent correspondence to Punjab regarding their unauthorized actions but received no response. Dkt. No. 11-2 at 2, 4–14. Haldiram's counsel followed up with a cease and desist letter in October 2024. *Id.* at 2, 16–32. The same month, Punjab responded to Haldiram's counsel and stated that it was not Punjab's intention "to act as distributor of Haldiram[']s" products and that it was "not aware of import restrictions of Haldiram[']s products." *Id.* at 34. It also requested a "conference to discuss proper channels of distribution of Haldiram's products." *Id.* at 34–35.

C.     **Haldiram Files Suit**

On August 4, 2025, Haldiram filed this action alleging that Punjab has altered Haldiram's products designed to be sold in India and imported, distributed, or sold them in the United States without Haldiram's authorization. Dkt. No. 1 at 8. It asserts claims for Federal Trademark Infringement under 16 U.S.C. § 1114, Federal Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a), and Common Law Unfair Competition. *Id.* at 15–19. Haldiram served the complaint and a draft of its Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue on Punjab on August 15, 2025, and did not make substantive changes to the drafts prior to filing. Dkt. No. 11-3 at 2, 4–7, 9. Haldiram also notified Punjab on August 20 that it would file this motion. *Id.* at 2. Haldiram did not receive a response or other communications from Punjab before it filed this motion. *Id.*

Haldiram filed the motion on August 20, 2025, Dkt. No. 11, and the next day the Court denied the request for an ex parte TRO, finding that Haldiram's lengthy delay in seeking that relief undercut its professed need for emergency relief before Punjab could be heard, Dkt. No. 13 at 3.

However, the Court granted Haldiram's request for an order to show cause why a preliminary injunction should not issue and set a briefing schedule, including a September 10, 2025 deadline for Punjab to respond to Haldiram's request for a preliminary injunction. *Id.* at 3–4.

Punjab subsequently filed a motion for an extension of its September 10 response deadline because it was "consulting with attorneys to represent [it] regarding this matter." Dkt. No. 16 at 1. The Court struck that pro se motion because it was not properly before the Court, explaining that "[b]usiness entities other than sole proprietorships must be represented by counsel and cannot proceed pro se." Dkt. No. 19 at 1–2. In the same order, the Court granted Haldiram's motion for default, Dkt. No. 18, finding that Haldiram had served Punjab on August 15, 2025, *see* Dkt. No. 7 at 2–4, but Punjab had failed to appear or otherwise defend, Dkt. No. 19 at 2. In the intervening months, Punjab has not appeared or responded to the motion for a preliminary injunction.

## II.    DISCUSSION

### A.    Legal Standard

To obtain a preliminary injunction, plaintiffs must establish (1) that they are "likely to succeed on the merits," (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [their] favor," and (4) "that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). The mere "possibility" of irreparable harm is insufficient; instead, the moving party must "demonstrate that irreparable injury is likely in the absence of an injunction." *Id.* at 22.

The Ninth Circuit employs a "sliding scale" approach, under which the four elements are balanced "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a

likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that it is entitled to such relief. *Winter*, 555 U.S. at 22.

Although individual appellate panels have questioned the usefulness of the distinction, the Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions. *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017). Prohibitory injunctions "aim to preserve the status quo by preventing a party from taking action," while mandatory injunctions "alter[] the status quo by requiring a party to take action and thus place[] a higher burden on the plaintiff to show the facts and law clearly favor the moving party." *Youth 71Five Ministries v. Williams*, 153 F.4th 704, 717 (9th Cir. 2025) (citation modified). Here, Haldiram seeks a prohibitory injunction that precludes Punjab from importing, distributing, selling, and/or offering for sale Punjab's gray market goods that contain Haldiram's trademarks, *see* Dkt. No. 11 at 1–2, which was the state of the "the legally relevant relationship between the parties before the controversy arose," that is, before the action challenged in the complaint occurred, *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (emphasis omitted).

The Lanham Act provides that injunctions may be granted "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office[.]" 15 U.S.C. § 1116(a); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116(a)).

**B.     The Court Issues a Preliminary Injunction**

       1.     <u>Likelihood of Success on the Merits</u>

Haldiram argues that it is likely to succeed on its trademark infringement claim because Punjab is selling gray market Haldiram India Products in the United States even though those

products "are not authorized for sale in the United States." Dkt. No. 11 at 10. It further contends that

> [e]ven where goods bearing a United States trademark are authorized for sale by a plaintiff in another country, a defendant who sells these goods in the United States is liable for trademark infringement if the imported goods are materially different than those authorized by the plaintiff for sale in the United States.

*Id.* at 11. This is because "materially different imported goods are not 'genuine' and are therefore not exempt from claims of trademark infringement." *Id.* It argues that it has established that it has valid trademark rights and that Punjab's sale of India Haldiram Products is likely to confuse U.S. consumers. *Id.* at 11–12.

Punjab has not responded to this motion, which the Court construes "as an admission that the motion has merit." LCR 7(b)(2). Even without that admission, the Court finds that Haldiram has shown a likelihood of success on the merits.

To prevail on a trademark infringement claim, a plaintiff must show that: "(1) it has a valid, protectable trademark, and (2) that [the defendant's] use of the mark is likely to cause confusion." *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). "Registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration." *Id.* at 970 (citation modified). Haldiram owns several registered trademarks encompassing the classes and categories of goods sold by Punjab. Dkt. No. 11-5 at 2; *see also* Dkt. No. 11-2 at 2, 37 (Reg. No. 1,963,956 for "snack mix consisting primarily of crackers, pretzels, . . . candied nuts, and candy"), 39 (Reg. No. 2,357,883 for "candy, cereal based snack foods, and a line of bakery goods"), 41 (Reg. No. 2,766,286 for a variety of similar products). Because these marks are registered with the United States Patent and Trademark Office ("USPTO"), they are presumed valid, and Haldiram—as the owner of the registered

marks—is presumed to have the exclusive right to use the marks in connection with the goods listed in its registration. *See, e.g.*, *Applied Info. Scis. Corp.*, 511 F.3d at 970.

As set forth more fully above, Punjab has sold and is selling goods using the Haldiram marks without permission. Dkt. No. 11-5 at 4. At this point, the Court need not parse which Punjab-sold products are covered by which registration and whether they are within the scope of the goods specified in the registration because "the scope of validity and the scope of relief for infringement are not coextensive." *Applied Info. Scis. Corp.*, 511 F.3d at 971 ("Although the validity of a registered mark extends only to the listed goods or services, an owner's remedies against confusion with its valid mark are not so circumscribed."). Consequently, "a trademark owner may seek redress if another's use of the mark on different goods or services is likely to cause confusion with the owner's use of the mark in connection with its registered goods[.]" *Id.*; *see also id.* at 972 ("Having established a protectable interest by proving it is the owner of a registered trademark, the owner does not additionally have to show that the defendant's allegedly confusing use involves the *same* goods or services listed in the registration.").

Haldiram argues that Punjab's sale of gray market goods containing Haldiram's Marks constitutes infringement. Dkt. No. 11 at 11–15. A gray-market good is "a foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the United States trademark holder." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 285 (1988). The Haldiram products at issue here fall within that definition because they were manufactured in India, they bear Haldiram's Marks, and they were imported into the United States without Haldiram's consent. *See* Dkt. No. 11-5 at 2–4. That said, whether the products are technically characterized as gray-market products or not ultimately does not determine whether infringement occurred or the solution. *See, e.g.*, *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1092 (9th Cir. 2013).

Gray-market goods do not infringe if they are "genuine," meaning that they "do[] not materially differ from the U.S. trademark owner's product." *Id.* at 1093; *see also Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998) (explaining that where goods are marketed under "identical marks but are materially different . . . the alleged infringer's goods are considered 'non-genuine' and the sale of the goods constitutes infringement" (citation modified)); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 638 (1st Cir. 1992) ("[A]n unauthorized importation may well turn an otherwise 'genuine' product into a 'counterfeit' one. In other words, the unauthorized importation and sale of materially different merchandise violates Lanham Trade–Mark Act section 32 because a difference in products bearing the same name confuses consumers and impinges on the local trademark holder's goodwill."). "[T]he threshold for determining a material difference is low," and "[t]he key question is whether a consumer is likely to consider a difference relevant when purchasing a product." *Hokto Kinoko Co.*, 738 F.3d at 1093. Consequently, to determine whether Punjab's products are genuine, the Court considers whether they "materially differ" from Haldiram's products. *Id.* at 1094.

Haldiram contends that Punjab's "'grey market goods' differ from Haldiram U.S. Products in a number of material respects," including in their packaging, labelling, product composition and formulation, and customer service procedure. Dkt. No. 11 at 11–15. Haldiram has provided evidence that Punjab is distributing the Indian Kaju Mixture in the United States. *See* Dkt. No. 11-4 at 3, 23, 25–27. The U.S. and Indian versions of Haldiram's Kaju Mixture contain different percentages of cashews and different ingredients. Dkt. No. 11-5 at 3.  Such differences in formulation can be material, particularly where, as here, Haldiram notes that its U.S.-bound products are "formulated to match United States consumer tastes and shelf-life expectations for imported products[.]" Dkt. No. 11-5 at 2. In addition, the U.S.-bound and Indian versions of the products direct customers to different customer service entities, and only the one that is designated

for Haldiram's U.S. products "can properly address concerns that consumers raise about Haldiram's products that have been exported into the United States." Dkt. No. 11-5 at 3–4; *see also Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1027 (C.D. Cal. 2011) (finding that "customer support information on [Hokto Japan's] packaging uniquely designed for the Japanese market" was materially different from the goods for the U.S. market that "lists a California-based website" from which customer service information was "readily available"), *aff'd*, 738 F.3d 1085; *Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626, 631 (C.D. Cal. 2021) (finding material that the two sets of products "list different websites for customer service related to the products"). These differences render the Indian products materially different and thus not genuine.[1]

Because Punjab's products are not "genuine," Punjab is not exempt from potential liability for trademark infringement, and the Court must next determine if Haldiram has shown a likelihood of customer confusion. *Hokto Kinoko Co.*, 738 F.3d at 1095. On this point, Haldiram argues that Punjab's use of its marks "will confuse United States consumers, who expect the products bearing these marks to be the same as the products normally sold in the United States under the HALIDRAM'S Marks." Dkt. No. 11 at 11.

To evaluate the likelihood of customer confusion, the Court considers "the long-established factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–54 (9th Cir. 1979)." *Hokto Kinoko Co.*, 738 F.3d at 1095. The *Sleekcraft* factors include (1) the "similarity of the marks"; (2) the "strength of the mark" that has allegedly been infringed; (3) "evidence of actual confusion"; (4) the relatedness or "proximity" of the goods; (5) the "normal marketing channels" used by both

---

[1] At this point, the Court does not reach whether Punjab's addition of the nutrition stickers renders the imported Indian products not genuine because the other differences are sufficient to show the lack of genuineness. Further, Haldiram has not addressed the fact that the stickers appear compliant with FDA regulations or whether consumers would consider how FDA-compliant nutrition information appears on the package—whether on the original packaging or on an affixed sticker—to be material.

ORDER GRANTING IN PART MOTION FOR A PRELIMINARY INJUNCTION - 11

parties; (6) the "type of goods and the degree of care likely to be exercised by the purchaser"; (7) the alleged infringer's "intent in selecting the mark"; and (8) evidence that "either party may expand his business to compete with the other." *Sleekcraft Boats*, 599 F.2d at 348–54. Courts apply these factors "flexibly," and a plaintiff "need not demonstrate that every factor weighs in its favor." *Hokto Kinoko Co.*, 738 F.3d at 1096. "[T]he importation of goods properly trademarked abroad but not intended for sale locally may confuse consumers and may well threaten the local mark owner's goodwill." *Societe Des Produits Nestle*, 982 F.2d at 636–37. Although Haldiram did not directly address these factors, it has provided enough information in its filings for the Court to evaluate them.

The first factor, the similarity of the marks, "weighs unequivocally in favor of a finding of consumer confusion because the marks are identical." *Hokto Kinoko Co.*, 738 F.3d at 1096. The second factor also weighs in Haldiram's favor because its marks are strong; that is, its marks are unique and not "suggestive" or "descriptive" of the products to which they relate. *See Brookfield Commc'ns v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999) (contrasting "fanciful" or "arbitrary" marks with "suggestive" marks, "descriptive" marks, and other types of less distinctive marks).[2] Although Haldiram has not presented any evidence as to the third factor, actual consumer confusion, the Ninth Circuit has "specifically recognized that likelihood of confusion may be established absent such evidence." *Hokto Kinoko Co.*, 738 F.3d at 1096. The fourth factor, the relatedness of the goods, weighs heavily in Haldiram's favor because Punjab is selling Haldiram's own gray market products. *See* Dkt. No. 11-5 at 2–4. The fifth factor—the parties' normal marketing channels—also weighs in Haldiram's favor because Haldiram's products and Punjab's gray-market Haldiram products are both sold through retail channels in Washington. *See* Dkt. No.

---

[2] The Court further notes that the USPTO trademark information for Registration Numbers 2,766,286 and 2,357,883 specifies that "HR HALDIRAM" is not the name of a living individual.

11-4 at 2–4 (explaining that Reshmi's distributes and sells Haldiram's products through both retail and wholesale channels in Washington and other Western states, and its employees observed Punjab's gray-market Haldiram products for sale at three retail locations in Washington). The sixth factor, the type of goods and the degree of care purchasers are likely to exercise, also weighs in Haldiram's favor. Consumers are expected to be "more discerning" and "less easily confused" when purchasing expensive goods. *Brookfield*, 174 F.3d at 1060. But snack foods are low cost consumer goods, so "reasonably prudent purchasers are unlikely to carefully examine [their] packaging before each purchase." *Hokto Kinoko Co.*, 738 F.3d at 1096. "The seventh factor is the alleged infringer's intent in adopting the marks." *Id.* "[C]ourts will presume an intent to deceive the public" when an alleged infringer "knowingly adopts a mark identical or similar to another's mark[.]" *Id.* (citation modified). Here, Punjab sold and continues to sell Haldiram's Indian products that display Haldiram's Marks without authorization. *See, e.g.*, Dkt. No. 11-4 at 2–4. The presumption of intent is bolstered by the fact that Punjab affixed stickers over the labels indicating "not for export" and over the foreign non-FDA-compliant nutrition information. *See id.* Punjab "has produced no evidence to negate the presumption that it intended to confuse consumers." *Hokto Kinoko Co.*, 738 F.3d at 1096. The final factor—"whether either party is likely to expand its product lines so as to compete directly with the product sold under the allegedly infringing mark," *id.* at 1096–97—is neutral because there is no evidence in the record that addresses it. On balance, the *Sleekcraft* factors weigh heavily in Haldiram's favor. Accordingly, the Court finds that Punjab's products are likely to confuse consumers, and Haldiram has shown a likelihood of success on its trademark infringement claim under 15 U.S.C. § 1114.

  2. <u>Irreparable Harm</u>

  Haldiram argues that it "has already suffered, and continues to suffer, irreparable harm without the injunctive relief it seeks." Dkt. No. 11 at 15. In support, it contends that "[i]rreparable

harm is presumed upon a showing of likelihood of success on the merits." *Id.* It also argues that "injury to a business'[s] reputation or goodwill is presumed to be irreparable due to the difficulty in calculating such harm." *Id.*

Effective December 27, 2020, the Trademark Modernization Act modified 15 U.S.C. § 1116, which relates to injunctive relief in trademark actions. Pub. L. 116-260, § 226, 134 Stat. 2208 (2020); *see also Vital Pharms. v. PHD Mktg.*, No. CV 20-6745-RSWL-JCx, 2021 WL 6881866, at *5 (C.D. Cal. Mar. 12, 2021). The statute now includes the following provision: "A plaintiff seeking any such injunction" to prevent a trademark violation "shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction[.]" 15 U.S.C. § 1116(a). Punjab has not responded to this motion or provided any evidence to rebut the presumption.

Further, Haldiram has provided specific evidence to show a likelihood of irreparable harm. Its General Manager-Export states that Punjab's actions have "damaged the inherent value of the HALDIRAM'S Marks and the goodwill associated with the brand, . . . negatively affected Haldiram's relationships with current customers and its ability to attract new customers," and harmed its brand by leading "customers intending to purchase Haldiram's United States products, [to] mistakenly purchase materially different products only intended for the India market." Dkt. No. 11-5 at 4–5. The Court finds that the harm to Haldiram's brand and customer relationships is irreparable because the "loss of . . . goodwill[] and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated." *Societe Des Produits Nestle*, 982 F.2d at 640; *see also Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 F. App'x 469, 474 (9th Cir. 2015) (noting that harm to "reputation and goodwill . . . constitutes irreparable

harm, as it is not readily compensable"). Haldiram has thus shown that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief.

### 3. The Balance of Equities

Haldiram argues that the balance of hardships tips "strongly" in its favor because (1) Punjab has "no legal right to sell materially different goods," (2) "the harm to Haldiram if the Court denies the requested relief far outweighs any harm to Defendant if the Court issues the requested relief," and (3) "[e]very sale of an unauthorized Haldiram India Product diminishes the value of the HALDIRAM'S Marks, causing harm to the company's reputation and deceiving consumers." Dkt. No. 11 at 15–16. It contends that, "[i]n contrast, the requested relief will not prevent Defendant[] from taking any lawful action, including continuing to operate a legitimate business." *Id.* at 16. Defendant "would only be prevented from distributing Haldiram India Products and unfairly competing with Haldiram." *Id*. The Court agrees with Haldiram that the balance of equities weighs in its favor because Punjab has no right to sell Haldiram's goods, *see* Dkt. No. 11-5 at 4, so prohibiting it from doing so does not diminish its rights. Moreover, without an injunction, Punjab "would be more likely to continue violating [Haldiram's trademark] rights, imposing a hardship on [Haldiram]." *Hokto Kinoko Co.*, 810 F. Supp. 2d at 1033. Accordingly, the balance of equities weighs in Haldiram's favor.

### 4. The Public Interest

Haldiram argues that granting a preliminary injunction is in the public interest because "[a]n injunction against Defendant's unauthorized conduct promotes the public interest by eliminating the risk of consumer confusion and stemming the flow of unlawful and unauthorized products." Dkt. No. 11 at 16. It further contends that "[i]ndeed, '[t]he basic policy behind the Lanham Act is to protect customers against likelihood of confusion.'" *Id.* (quoting *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1256 (9th Cir. 1982)).

The Court agrees with Haldiram that a preliminary injunction benefits the public because it will prevent Punjab from selling Haldiram's Indian products in the U.S., even though those products are meant for sale only in India, *see* Dkt. No. 11-5 at 2, and thus will "prevent[] likelihood of confusion to consumers," *Hokto Kinoko Co.*, 810 F. Supp. 2d at 1033. The Court thus finds that all four factors weigh in favor of granting a preliminary injunction.

5. <u>The Scope of the Injunction</u>

Haldiram seeks an injunction as follows:

a.    "enjoining and restraining Defendant from acquiring, importing, distributing, selling, offering for sale, advertising, or promoting, or being involved in the importation, distribution, sale, offering for sale, advertisement, or promotion of, in the United States, of any products bearing the HALDIRAM'S, [Haldiram's logo] and [Haldiram's logo] trademarks ('HALDIRAM'S Marks') in the United States that are not authorized for sale in the United States market, including, but not limited to, the products Haldiram manufactures for sale in India," Dkt. No. 11-1 at 2;

b.    "enjoin[ing] and restrain[ing Punjab] from directly or indirectly using the HALDIRAM'S Marks or any other trademark that is confusingly similar to the HALDIRAM'S Marks in connection with its business," *id.*; and

c.    enjoining and restraining Punjab from "[a]ssisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (b) above," *id.*

"[A]n injunction must be narrowly tailored to . . . remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law." *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004). In addition, an injunction must not be vague because the Rule 65 notice standard requires that "those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 444 (1974) (explaining that injunctions must be precise because "serious penalties can befall those who are found to be in contempt of court injunctions").

Haldiram's proposed order seeks to enjoin Punjab not just from using its marks but from using "any other trademark that is confusingly similar to the HALDIRAM'S Marks" in connection

with its business. Dkt. No. 11-1 at 2. This "confusingly similar" portion of the requested injunction is "overbroad and vague, as it does not provide a clear standard by which Defendant or third parties could determine what conduct is prohibited." *Astral IP Enter. Ltd. v. OHealthApps Studio*, No. 2:23-cv-00607-MCS-JPR, 2023 WL 5498881, at *6 (C.D. Cal. May 24, 2023). Haldiram's proposed order also seeks to prohibit Punjab from using its marks on *any* product not authorized for sale in the United States, "including, *but not limited to*, the products Haldiram manufactures for sale in India." Dkt. No. 11-1 at 2 (emphasis added). Haldiram's preliminary injunction motion does not complain that Punjab is using Haldiram's Marks on such other products, and Court has not analyzed whether Haldiram's gray market goods outside of those manufactured in India would qualify as "genuine" if sold in the United States. This provision is therefore overbroad. However, the remainder of the requested injunction is narrowly tailored to prevent Punjab from continuing to infringe Haldiram's trademarks. *See id.* The Court thus grants the preliminary injunction with the exception of the overbroad requested relief discussed above.

      6.  <u>No Bond is Required</u>

Haldiram argues that no bond should be required because there is "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Dkt. No. 11 at 17 (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). It further contends that Punjab "is distributing unauthorized food products that are not in compliance with FDA regulation and are materially different than authorized, genuine Haldiram U.S. Products." *Id.* Therefore, Punjab "will not incur any lawful damages as the result of the injunction." *Id.* And "[e]ven if the Court were to later find that the injunction was wrongly entered," Haldiram contends that Punjab "would be able to sell the Haldiram India Products" at that time. *Id.*

Courts "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found

ORDER GRANTING IN PART MOTION FOR A PRELIMINARY INJUNCTION - 17

to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Despite the seemingly mandatory language of the rule, it "invests the district court with discretion as to the amount of security required, *if any*." *Jorgensen*, 320 F.3d at 919 (citation modified). Punjab has not requested security in response to this motion. *See, e.g. Walsh v. Zazzali*, No. SACV-15-1970 JVS (JCGx), 2016 WL 7647556, at *6 (C.D. Cal. Feb. 8, 2016) (declining to require a bond when the defendant did not request one). Moreover, Punjab has not argued that it will suffer damages from an injunction, and it does not appear that it will be damaged when it has no right to sell Haldiram's products in the first place. *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." (citation modified)). Accordingly, the Court does not require Haldiram to post a bond.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Haldiram's motion for a preliminary injunction, Dkt. No. 11. The Court ORDERS that Defendant Punjab Trading, Inc. is enjoined and restrained from:

1. acquiring, importing, distributing, selling, offering for sale, advertising, or promoting, or being involved in the importation, distribution, sale, offering for sale, advertisement, or promotion in the United States of any products manufactured for sale in India and bearing any of the below-listed trademarks (the "Haldiram's Marks") that are not authorized for sale in the United States market;

| Marks | Registration |
|---|---|
| Haldiram's (logo) | Reg. No. 2,766,286 |
| Haldiram's (logo) | Reg. No. 2,357,883 |

ORDER GRANTING IN PART MOTION FOR A PRELIMINARY INJUNCTION - 18

| | |
|---|---|
| Haldiram's | Reg. No. 1,963,956 |

2. directly or indirectly using the Haldiram's Marks in connection with its business;

3. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the two paragraphs above.

Pursuant to Federal Rule of Civil Procedure 65(d)(2), this Order is binding on those persons who receive actual notice of this Order, if those persons are an officer, agent, servant, employee, or attorney of Punjab Trading, Inc. or if they are acting in active concert or participation with Punjab Trading, Inc.

Haldiram is ordered to serve a copy of this Order on Punjab Trading, Inc. in the manner described in Federal Rule of Civil Procedure 4. This Preliminary Injunction shall remain in effect until final judgment in this action or further order of the Court.

Dated this 12th day of November, 2025.

*Lauren King*
Lauren King
United States District Judge